MICHAEL KURIS and Others, Plaintiffs, *v.* PEPPER POULTRY Co., INC., Defendant.

Supreme Court, Special Term, Bronx County, July 23, 1940.

*Myron M. Myers,* for the plaintiffs.

*Nathan E. Zelby,* for the defendant.

EDER, J. The defendant, a foreign corporation, is engaged amongst other of its activities, in the interstate motor transportation of poultry. As such it is subject to the provisions of the Interstate Commerce Commission Act, chapter 8 of title 49 of the United States Code, sections 301 to 327, inclusive, known as the "Motor Carrier Act, 1935," under the jurisdiction of the Interstate Commerce Commission. It applied for and obtained from the Commission a permit or certificate of authority to operate as such interstate motor carrier.

It is provided by subdivision (a) of section 221 of said act (U. S. Code, tit. 49, § 321, subd. [a]) that it shall be the duty of every motor carrier to file with the board of each State in which it operates under a certificate or permit issued under said act (chapter 8), and with the Commission, a designation in writing of the name and post office address of a person upon whom or which service of notices or orders may be made under said act. By subdivision (c) of said section 221 (U. S. Code, tit. 49, § 321, subd. [c]) entitled "*Designation of agent for service of notice* * * *"* it is further provided as follows: "Every motor carrier shall also file with the Board of each State in which it operates a designation in writing of the name and post office address of a person in such State upon whom process issued by or under the authority of any court having jurisdiction of the subject matter may be served in any proceeding at law or equity brought against such carrier. Such designation may from time to time be changed by like writing similarly filed. In the event such carrier fails to file such designation, service may be made upon any agent of such motor carrier within such State." (U. S. Code, tit. 49, § 321, subd. [c].)

Pursuant to this provision the defendant designated one Samuel Sahn as its statutory agent upon whom process could be served in the State of New York in any action brought against it in said State and he was served with a copy of the summons and complaint in this action. Section 229 of the Civil Practice Act of this State provides how process shall be served, in this State, upon a foreign corporation and reads as follows:

"Personal service of the summons upon a foreign corporation must be made by delivering a copy thereof, within the State, as follows:

" 1. To the president, vice-president, treasurer, assistant treasurer, secretary or assistant secretary; or, if the corporation lack either of those officers, to the officer performing corresponding functions under another name.

" 2. To a person or public officer designated for the purpose pursuant to law by certificate filed in the department of State, the department of banks or department of insurance, whose designation is in force, or if a designee, other than a public officer, has died, resigned or removed from the State, to the Secretary of State as provided by the general corporation law.

" 3. To the cashier, a director or a managing agent of the corporation, within the State, if service cannot be effected under subdivision two of this section, or an officer of the corporation specified in subdivision one of this section, with due diligence, cannot be found within the State."

Although the defendant expressly designated the above named person as its agent upon whom service of process could be made in any action brought against it in this State, it now contends that in spite of this designation and provision of the Federal Motor Carrier Act such service is invalid and that the sole and exclusive method of effecting service of process on a foreign corporation is that provided by said section 229 of the Civil Practice Act; that as service was not effected in conformity therewith such service is void and that no jurisdiction was acquired herein over the person of the defendant. Hence, it asks that such service be set aside and that the action herein be dismissed.

On the other hand, the plaintiffs contend that the defendant, being an interstate motor carrier, operating under the provisions of said Motor Carrier Act, is bound thereby and that the method of service prescribed by subdivision (c) of said section 221 thereof is exclusive, and being a Federal statute, is paramount to the State law on the same subject. The question presented for decision is, therefore, " Which mode of service controls? " This question was presented but not decided in *Huber* v. *Wilson* (—— Tenn. App. ——; 126 S. W. [2d] 893); the court there held that a determination thereof was not necessary to a disposition of the appeal. The point is thus presented to this court as one of first impression.

Service of process is a matter of adjective law, since it relates to and deals with the mechanics of practice and procedure — the legal machinery by which the substantive law is made effective. (*Allen* v. *Bailey*, 91 Colo. 260; 14 P. [2d] 1087, 1091; *State* v. *Elmore*, 179 La. 1057; 155 So. 896, 898.) In connection therewith, our appellate court has held that as respects service of process on a foreign corporation that " The Legislature has the power to say

how jurisdiction of a corporation can be obtained." (*Eisenhofer* v. *New Yorker Zeitung P. & P. Co.*, 91 App. Div. 94.) In *McKeon* v. *McGowan & Sons* (229 App. Div. 568) the court declared that "Service of a summons upon a foreign corporation must be made by delivering a copy thereof within the State, as provided by one of the three subdivisions of section 229 of the Civil Practice Act." The court further declared that "This method is *exclusive*." (Italics supplied.)

It appears that Sahn, the statutory designee of the defendant corporation, designated under the Motor Carrier Act as its agent for service of process upon it, in this State, was not a person upon whom such service of process could be made under subdivision 1 of section 229 of the Civil Practice Act, for the reason that he was not an officer of the defendant corporation; it also appears that he was neither a cashier, director or managing agent; therefore, service could not be made upon him under subdivision 3 thereof. The only connection he had with it was as statutory agent appointed under the mentioned provision of the Motor Carrier Act.

When the defendant filed its designation with the Commission as provided by the said Motor Carrier Act, it also, in compliance therewith, filed such designation with the Public Service Commission of this State. But no certificate of designation was filed by it with the Department of State, Department of Banks or the Department of Insurance of this State, referred to in subdivision 2 of section 229 of the Civil Practice Act. It also appears from the moving papers, and it is not controverted, that the defendant corporation is not licensed to do business in this State, and in fact has not done and is not doing business within this State. It maintains no office here, and it maintains no employees, agents, sales representatives, or any other person or persons who have any connection, direct or indirect, with the defendant corporation. It is domiciled in Delaware, where it is engaged in selling poultry, as one of its activities. All its business is conducted and transacted in that State; its sales, collections and contracts are all made there. In view of these facts, and this situation, it is clear that said Sahn is not a person coming within the purview of subdivision 2 of said section 229 of the Civil Practice Act.

If the service made can stand up as effectice at all, it must, in consequence, rest solely upon subdivision (c) of section 221 of the Motor Carrier Act. This is recognized by plaintiffs, who place their reliance thereon to justify and uphold the validity of the service. There is, obviously, a clear conflict between the State and Federal statutes as to the method by which service of process could be effected in this State upon the defendant corporation for the purpose

of acquiring jurisdiction over it. We come now to the question as to which method controls.

It is a settled rule of statutory construction that if a State law in its terms and purpose is plainly in conflict with a Federal law, then the latter is paramount and exclusive and supersedes the former. (*Panhandle Oil Co.* v. *Mississippi*, 277 U. S. 218; *Simpson* v. *Shepard*, 230 id. 352, 400; *Flanders* v. *Georgia S. & F. R. Co.*, 68 Fla. 479; 67 So. 68.) This rule is, however, subject to the exception that the latter is paramount and supersedes the former only " *within its proper sphere of action.*" (*Panhandle, Simpson* and *Flanders* cases, *supra.*) That is to say, that the supremacy of acts of Congress over State laws is not without its limitation. As said in *Calder* v. *Bull* (3 Dall. [U. S.] 386, 388): " There are acts which the Federal, or State Legislature cannot do, without exceeding their authority." The Federal law, in its appropriate sphere, is supreme, but any legislation by Congress beyond the limits of the power delegated· to it, is null and void. (*Gordon* v. *United States*, 117 U. S. 697, 705; *Collector* v. *Day*, 11 Wall. [U. S.] 113, 124.) It is declared by the Tenth Amendment to the Constitution of the United States that " The powers not delegated to the United States by the Constitution, nor prohibited by it to the States, are reserved to the States respectively, or to the people." In conformity therewith it is held that the sovereign powers vested in State governments remained unaltered and unimpaired, except so far as they were granted to the government of the United States and that it therefore can claim no powers which are not granted to it by the Constitution and that the powers actually granted must be such as are expressly given, or given by necessary implication. (*Gordon* and *Collector* cases, *supra.*) Eminent and authoritative text writers have expressed the same view. (1 Cooley on Constitutional Limitations [8th ed.], 10, 11; Potter's Dwarris on Statutes and Constitutions, p. 62; Endlich on Interpretation of Statutes, p. 754; Bishop on the Written Laws, § 92.)

Plaintiffs urge that by virtue of the commerce clause of the Constitution (art. 1, § 8, cl. 3) Congress is vested with exclusive authority over matters of and pertaining to interstate commerce; that the enactment by Congress of the Federal Motor Carrier Act is well within its constitutional power and that the enactment of the service of process provision, subdivision (c) of section 221 thereof, is fully within the proper sphere of its action and, therefore, supersedes the State law on that subject (Civ. Prac. Act, § 229); that it is hence controlling and exclusive and that the service made pursuant to subdivision (c) of section 221 is valid; that jurisdiction

has thus been acquired over the person of the defendant as a foreign corporation.

I am unable to accept this view. Firstly, it is held that so far as the Federal Constitution is concerned, it is within the acknowledged power of every Legislature to prescribe rules of procedure in courts of its own government. The establishment of courts of justice, within each State, according to its laws, and of the procedure in conjunction therewith, is the peculiar and exclusive province and duty of the State Legislatures. (12 C. J. §§ 288, 291, p. 826; 15 id. § 178, p. 854; 16 C. J. S. Const. Law, § 128, pp. 312, 313, 328; 11 Am. Jur. Const. Law, § 192, p. 892; *Adams* v. *New York*, 192 U. S. 585, 599; *State* v. *LaPointe*, 81 N. H. 227; 123 A. 692; Cooley's Const. Limitations [8th ed.], p. 68.) Secondly, a study of the provisions of the Motor Carrier Act reveals the intent and purpose of Congress, under this chapter 8, to confer upon the Interstate Commerce Commission jurisdiction as respects the commercial, financial and business aspects of interstate highway transportation and to leave untouched in the hands of the States control over their internal affairs, especially in view of the provisions in said chapter 8 declaring the policy of Congress in enacting the act in question. This intent of Congress to restrict the act to the regulation of *commercial* practices involved in motor transportation, rather than to make it applicable to *other* considerations, clearly appears from section 202 of the act (Part II) (U. S. Code, tit. 49, § 302), which reads as follows: " § 302. *Declaration of policy and delegation of jurisdiction to Interstate Commerce Commission.* (a) It is hereby declared to be the policy of Congress to regulate transportation by motor carriers in such manner as to recognize and preserve the inherent advantages of, and foster sound economic conditions in, such transportation and among such carriers in the public interest; promote adequate, economical, and efficient service by motor carriers, and reasonable charges therefor, without unjust discriminations, undue preferences or advantages, and unfair or destructive competitive practices; improve the relations between, and co-ordinate transportation by and regulation of, motor carriers and other carriers; develop and preserve a highway transportation system properly adapted to the needs of the commerce of the United States and of the national defense; and cooperate with the several States and the duly authorized officials thereof and with any organization of motor carriers in the administration and enforcement of this chapter."

When the question is whether a Federal act overrides a State law, the entire scheme of the statute must be considered. (11 Am. Jur. Const. Law, § 176, p. 873.) Nowhere in the act does it

appear to be the intent and purpose of Congress, in the enactment of this law, to interfere with or usurp the power of the States relating to matters of State internal policy, concerning the jurisdiction of their courts or with the procedure prescribed by their Legislatures for the acquisition of jurisdiction by their judicial tribunals over foreign corporations. The clear intent and purpose of Congress was to limit the act solely to the regulation of *commercial* practices.

In *Collector* v. *Day* (*supra*) it is held that the general government and the States, although both exist within the same territorial limits, are separate and distinct sovereignties, acting separately and independently of each other, within their respective spheres. The State is a sovereign over matters confided or reserved to it by the Tenth Amendment. Nowhere can it be gleaned therefrom, or from any recorded construction thereof, that the States surrendered their exclusive control over affairs of strictly internal policy. (11 Am. Jur. Const. Law, § 171, p. 865.) Section 229 of the Civil Practice Act does not in the slightest manner deal with the subject of interstate commerce, or with the service of process with respect to any of the provisions of the Interstate Commerce Act or the Motor Carrier Act, or their enforcement; it deals solely with the service of process on a foreign corporation doing business within this State so as to acquire jurisdiction over it and this State legislation upon that subject in no way interferes with the power of Congress with regard to its jurisdiction over interstate commerce. Hence it cannot be said to be in conflict with subdivision (c) of section 221 of the Motor Carrier Act and superseded by it. In so far as this latter provision can be said to override the State law on the subject of service of process — a matter of State internal policy — it is ineffectual and does not supersede it for it would constitute legislation by Congress *not* " within its proper sphere of action." If it was intended to operate as a cumulative remedy, it cannot have that effect in this State, as the laws of this State make no provision therefor. The method prescribed by the State law is controlling and remains exclusive.

As the service of the summons was made pursuant to subdivision (c) of section 221 of the Motor Carrier Act and not in conformity with section 229 of the Civil Practice Act, the service is invalid and jurisdiction was not acquired over the person of the defendant. The service of the summons must be set aside and the action dismissed. Motion granted. Order signed.